ORIGINAL

SCAN

1 | COUGHLIN STOIA GELLER
 | RUDMAN & ROBBINS LLP
2 | KEITH F. PARK (54275)
 | DARREN J. ROBBINS (168593)
3 | TRAVIS E. DOWNS III (148274)
 | BENNY C. GOODMAN III (211302)
4 | 655 West Broadway, Suite 1900
 | San Diego, CA 92101
5 | Telephone: 619/231-1058
 | 619/231-7423 (fax)
6 | keithp@csgrr.com
 | darrenr@csgrr.com
7 | travisd@csgrr.com
 | bgoodman@csgrr.com
8
 | Lead Federal Derivative Plaintiff's Counsel
9

LODGED
CLERK, U.S. DISTRICT COURT

DEC 2 6 2007

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

FILED
CLERK, U.S. DISTRICT COURT

JAN – 7 2008

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

10

UNITED STATES DISTRICT COURT

11

CENTRAL DISTRICT OF CALIFORNIA

12

WESTERN DIVISION

13 | JOSEPH GUNTHER, Derivatively on ) | No. 2:06-cv-02529-R(CTx)
14 | Behalf of VITESSE SEMICONDUCTOR ) | (And All Consolidated Actions)
 | CORPORATION, )
15 | ) | Derivative Action
 | Plaintiff, )
16 | ) | ORDER PRELIMINARILY
 | vs. ) | APPROVING DERIVATIVE
17 | ) | SETTLEMENT AND PROVIDING
 | LOUIS R. TOMASETTA, et al., ) | FOR NOTICE
18 | )
 | Defendants, )
19 | )
 | – and – )
20 | )
 | VITESSE SEMICONDUCTOR )
21 | CORPORATION, a Delaware )
 | corporation, )
22 | )
 | Nominal Defendant. )
23 | )
24
25
26
27
28

1    WHEREAS, the Settling Parties have made application, pursuant to Federal
2  Rule of Civil Procedure 23.1, for an order approving the settlement (the "Settlement")
3  of the Federal Derivative Action, in accordance with an Amended Stipulation and
4  Agreement of Settlement dated as of October 5, 2007 (the "Stipulation"), which,
5  together with the Exhibits annexed thereto, sets forth the terms and conditions for a
6  proposed Settlement;

7    WHEREAS, all capitalized terms contained herein shall have the same
8  meanings as set forth in the Stipulation (in addition to those capitalized terms defined
9  herein); and

10    WHEREAS, and the Court having read and considered the Stipulation and the
11  Exhibits annexed thereto:

12    NOW THEREFORE, IT IS HEREBY ORDERED:

13    1.    The Court does hereby preliminarily approve, subject to further
14  consideration at the Settlement Hearing described below, the Stipulation and the
15  Settlement set forth therein, including the terms and conditions for settlement of the
16  Federal Derivative Action.

17    2.    A hearing (the "Settlement Hearing") shall be held before this Court on
18  March 17, 2008 at 10:00 a.m. at the United States Courthouse, 312 North Spring
19  Street, Courtroom 8, Los Angeles, California to determine: (i) whether the Settlement
20  of the Federal Derivative Action on the terms and conditions provided for in the
21  Stipulation, including the provision for the payment of fees and expenses to Plaintiffs'
22  Counsel in the Federal Derivative Action, is fair, reasonable and adequate to Vitesse
23  shareholders and to Vitesse and should be approved by the Court; and (ii) whether a
24  Judgment as provided in ¶1.7 of the Stipulation should be entered herein. The Court
25  may adjourn the Settlement Hearing or modify any of the dates set forth herein
26  without further notice to Vitesse shareholders.

27    3.    The Court approves, as to form and content, the Notice of Proposed
28  Settlement of Derivative Action and Hearing ("Notice") annexed as Exhibit 1 hereto

1    and the Summary Notice of Proposed Settlement of Class and Derivative Actions

2    ("Summary Notice") annexed as Exhibit 2 hereto, and finds that the mailing and

3    publication of the these notices, substantially in the manner and form set forth in this

4    Order, meet the requirements of Federal Rule of Civil Procedure 23.1 and due process,

5    and are the best notice practicable under the circumstances and shall constitute due

6    and sufficient notice to all Persons entitled thereto.

7        4.    The firm of Gilardi & Co. LLC ("Notice Administrator") is hereby

8    appointed to supervise and administer the notice procedure as more fully set forth

9    below:

10        (a)    Not later than January 21, 2008, the Notice shall be mailed to all

11    Current Vitesse Shareholders who can be identified with reasonable effort;

12        (b)    Not later than January 30, 2008, the Summary Notice shall be

13    published once in *Investor's Business Daily*; and

14        (c)    At least seven days prior to the Settlement Hearing, Derivative

15    Counsel shall serve on counsel for the Defendants in the Federal Derivative Action

16    and file with the Court proof, by affidavit or declaration, of such mailing and

17    publishing.

18        5.    All Current Vitesse Shareholders shall be bound by all orders,

19    determinations and judgments in the Federal Derivative Action concerning the

20    Settlement, whether favorable or unfavorable to the Current Vitesse Shareholders.

21        6.    Pending final determination of whether the Settlement should be

22    approved, no Current Vitesse Shareholder, either directly, representatively, or in any

23    other capacity, shall commence or prosecute against any of the Released Persons, any

24    action or proceeding in any court or tribunal asserting any of the Released Claims.

25        7.    All papers in support of the Settlement shall be filed with the Court and

26    served on or before March 5, 2008.

27        8.    Any Current Vitesse Shareholder may appear and show cause, if he, she

28    or it has any, why the Settlement of the Federal Derivative Action should not be

1 approved as fair, reasonable and adequate, or why a Judgment should not be entered

2 thereon, provided, however, that no Current Vitesse Shareholder shall be heard or

3 entitled to contest the approval of the terms and conditions of the Settlement, or, if

4 approved, the Judgment to be entered thereon approving the same, unless that Person

5 has, on or before February 25, 2008, filed with the Clerk of the Court and served on

6 the following counsel (delivered by hand or sent by first class mail) written objections

7 and copies of any papers and briefs in support thereof:

8     COUGHLIN STOIA GELLER
     RUDMAN & ROBBINS LLP

9     KEITH F. PARK
    DARREN J. ROBBINS

10     TRAVIS E. DOWNS III
    BENNY C. GOODMAN III

11     655 West Broadway, Suite 1900
    San Diego, CA  92101

12     Lead Federal Derivative Plaintiff's Counsel

13

14     KATTEN MUCHIN ROSENMAN LLP
    BRUCE G. VANYO

15     ANISSA D. SEYMOUR
    MARISA WESTERVELT

16     2029 Century Park East, Suite 2600
    Los Angeles, CA  90067-6042

17     Attorneys for Defendants Vincent Chan, James A.
    Cole, Alex Daly, John C. Lewis, and Thurman J.

18     Rodgers

19     O'MELVENY & MYERS LLP
    SETH ARONSON

20     DAVID I. HURWITZ
    MARC S. WILLIAMS

21     TRISTAN SORAH-REYES
    400 South Hope Street

22     Suite 1060
    Los Angeles, CA  90071-2899

23

24     Attorneys for Defendants Moshe Gavrielov,
    Edward Rogas, Jr., and Nominal Defendant

25     Vitesse Semiconductor Corporation

26

27

28

1    MICHAEL GREEN
     VICE PRESIDENT, GENERAL COUNSEL
2      AND SECRETARY
     VITESSE SEMICONDUCTOR CORPORATION
3    741 CALLE PLANO
     CAMARILLO, CA  93012
4
     Attorney for Nominal Defendant Vitesse
5    Semiconductor Corporation

6    HELLER EHRMAN LLP
     SARA B. BRODY
7    HOWARD CARO
     MADELEINE LOH
8    333 Bush Street, Suite 3100
     San Francisco, CA  94104-2878
9
     Attorney for Defendant Eugene F. Hovanec
10
     MORRISON & FOERSTER, LLP
11   DAN MARMALEFSKY
     JAMES P. MANISCALCO
12   555 West Fifth Street
     Suite 3500
13   Los Angeles, CA  90013-1024

14   Attorney for Defendant Louis R. Tomasetta

15   IRELL & MANELLA LLP
     DAVID SIEGEL
16   DANIEL LEFLER
     GLENN VANZURA
17   1800 Avenue of the Stars
     Suite 900
18   Los Angeles, CA  90067-4276

19   Attorney for Defendant Yatin Mody

20   WILSON SONSINI GOODRICH &
       ROSATI, P.C.
21   NINA LOCKER
     650 Page Mill Road
22   Palo Alto, CA  94304-1050

23   Attorney for Defendant Pierre R. Lamond

24   The written objections and copies of any papers and briefs in support thereof to be

25   filed in Court shall be delivered by hand or sent by first class mail to:

26

27

28

                                    - 4 -

1    CLERK OF THE COURT
UNITED STATES DISTRICT COURT
2    CENTRAL DISTRICT OF CALIFORNIA
3    WESTERN DIVISION
312 North Spring Street
4    Los Angeles, CA 90012

5

6    Any Current Vitesse Shareholder who does not make his, her or its objection in the

7    manner provided herein shall be deemed to have waived such objection and shall

8    forever be foreclosed from making any objection to the fairness, reasonableness or

9    adequacy of the Settlement as incorporated in the Stipulation, but shall otherwise be

10    bound by the Judgment to be entered and the releases to be given.

11         9.    Neither the Stipulation, nor any of its Exhibits (including but not limited

12    to the Corporate Governance policies attached as Exhibit C thereto), terms or

13    provisions, nor any of the negotiations or proceedings connected with it, shall be

14    deemed, used or construed as an admission or concession by Defendants or Vitesse or

15    any of them, or as evidence, of the truth or validity of any of the allegations in the

16    Federal Derivative Action, or of any liability, fault, or wrongdoing of any kind.

17         10.    The Court reserves the right to adjourn the date of the Settlement Hearing

18    or modify any other dates set forth herein without further notice to the Current Vitesse

19    Shareholders, and retains jurisdiction to consider all further applications arising out of

20    or connected with the Settlement. The Court may approve the Settlement, with such

21    modifications as may be agreed to by the Settling Parties, if appropriate, without

22    further notice to the Current Vitesse Shareholders.

         IT IS SO ORDERED.

23

24

25    DATED: Jan. 7, 2008

26                    THE HONORABLE MANUEL L. REAL
                    UNITED STATES DISTRICT JUDGE

27    S:\Settlement\Vitesse.set\11-16-07 Final Revised Documents\12-19 CLEAN v9 - Derivative Action - Order Preliminarily Approving Derivative Settlement.doc

28

1 | COUGHLIN STOIA GELLER
     RUDMAN & ROBBINS LLP
2 | KEITH F. PARK (54275)
    DARREN J. ROBBINS (168593)
3 | TRAVIS E. DOWNS III (148274)
    BENNY C. GOODMAN III (211302)
4 | 655 West Broadway, Suite 1900
    San Diego, CA 92101
5 | Telephone: 619/231-1058
    619/231-7423 (fax)
6 | keithp@csgrr.com
    darrenr@csgrr.com
7 | travisd@csgrr.com
    bgoodman@csgrr.com

Lead Federal Derivative Plaintiff's Counsel

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| JOSEPH GUNTHER, Derivatively on Behalf of VITESSE SEMICONDUCTOR CORPORATION, | No. 2:06-cv-02529-R(CTx) (And All Consolidated Actions) |
| Plaintiff, | Derivative Action |
| vs. | NOTICE OF PROPOSED SETTLEMENT OF SHAREHOLDER DERIVATIVE ACTION AND HEARING |
| LOUIS R. TOMASETTA, et al., | |
| Defendants, | EXHIBIT A-1 |
| – and – | |
| VITESSE SEMICONDUCTOR CORPORATION, a Delaware corporation, | |
| Nominal Defendant. | |

6

**TO: ANY PERSON WHO OWNED VITESSE SEMICONDUCTOR CORPORATION COMMON STOCK AS OF OCTOBER 5, 2007 ("CURRENT VITESSE SHAREHOLDER").**

### PLEASE READ THIS NOTICE CAREFULLY

**THIS NOTICE RELATES TO THE PENDENCY AND PROPOSED SETTLEMENT OF THIS SHAREHOLDER DERIVATIVE LITIGATION**

**YOU ARE HEREBY NOTIFIED,** pursuant to Federal Rule of Civil Procedure 23.1 and an Order of the United States District Court for the Central District of California, Western Division (the "Court"), that a proposed settlement (the "Settlement") has been reached between the Lead Federal Derivative Plaintiff, on behalf of nominal defendant Vitesse Semiconductor Corporation ("Vitesse" or the "Company"), certain of the Defendants and Vitesse in the above-captioned derivative litigation (the "Federal Derivative Action"). The Settling Defendants are Louis R. Tomasetta, Pierre R. Lamond, Thurman J. Rodgers, Vincent Chan, James A. Cole, Alex Daly, Moshe Gavrielov, John C. Lewis, Edward Rogas, Jr., Eugene F. Hovanec, and Yatin Mody. The Federal Derivative Action has been brought derivatively on behalf of Vitesse to remedy the harm allegedly caused to the Company by the Defendants' alleged violations of Federal and State law and breaches of fiduciary duties.

The benefits to the Company of the proposed Settlement, which is subject to Court approval, include Vitesse's adoption of certain corporate governance measures, as set forth in Exhibit A to this Notice. In addition, $10,200,000 in cash will be paid by Vitesse's directors' and officers' liability insurers and certain of the Defendants to settle a related Class Action. Vitesse will not be contributing any cash towards the settlement of the Class Action. These same individual Defendants will also contribute 1,272,669 shares of Vitesse common stock and Vitesse will contribute 2,650,000 shares of Vitesse common stock to settle the Class Action.

A hearing (the "Settlement Hearing") will be held by the Court on March 17, 2008 at the United States Courthouse, 312 North Spring Street, Courtroom 8, Los

7

1  Angeles, California to determine: (i) whether the Settlement of the Federal Derivative
2  Action on the terms and conditions provided for in the Stipulation is fair, reasonable
3  and adequate (including the provision for the payment of 4,900,000 shares of Vitesse
4  common stock to be paid to Derivative Plaintiffs' counsel for fees and expenses,) to
5  the Current Vitesse Shareholders and to Vitesse and should be approved by the Court;
6  and (ii) whether a Judgment as provided in ¶1.7 of the Stipulation should be entered
7  herein.

8      The Settling Defendants have denied, and continue to deny, and have contested
9  and continue to contest each and every allegation of liability and wrongdoing on their
10 part, and assert that they have strong factual and legal defenses to all claims alleged
11 against them in the Consolidated Verified Shareholder Derivative Complaint (the
12 "Complaint") and that such claims are without merit.   Without admitting any
13 wrongdoing or liability on their part whatsoever, the Settling Defendants nevertheless
14 are willing to enter into the Settlement provided for herein in order fully and finally to
15 settle and dispose of all claims that have been or could have been asserted against
16 them in the Federal Derivative Action and to avoid the continuing burden, expense,
17 inconvenience and distraction of this protracted litigation.

18 **I.      THE CLASS ACTION AND THE DERIVATIVE ACTION**

19     **A.      Background**

20     In April 2006 and thereafter, nine shareholder derivative actions and seven
21 securities class actions relating to Vitesse were brought in the Court. The nine federal
22 derivative actions were consolidated as *Gunther v. Tomasetta, et al.*, Case No. 06-
23 2529 (the "Federal Derivative Action").   The seven federal securities class actions
24 were consolidated as *Grasso v. Vitesse Semiconductor Corp., et al.*, Case No. 06-2639
25 (the "Class Action").   Collectively, the Federal Derivative Action and the Class
26 Action are referred to herein as the "Federal Actions."

27     On October 2, 2006, the Federal Court appointed James Bennett Lead Plaintiff
28 ("Lead Federal Derivative Plaintiff"). The Lead Federal Derivative Plaintiff filed a

8

1   consolidated verified shareholder derivative complaint on January 23, 2007 (the

2   "Federal Derivative Complaint").  The Federal Derivative Complaint alleges claims

3   for violations of §§10(b), 14(a) and 20(a) of the Securities Exchange Act of 1934,

4   violations of the Sarbanes-Oxley Act of 2002 and violations of state law, including

5   breaches of fiduciary duty, misappropriation of information, corporate waste, gross

6   mismanagement, abuse of control and unjust enrichment, rescission, accounting,

7   California Corporations Code §§25402 and 25502.5, breach of contract, professional

8   negligence and negligent misrepresentation.

9       Also in April 2006 and thereafter, five shareholder derivative complaints were

10  filed in the Superior Court of California, County of Ventura (the "State Court") on

11  behalf of Vitesse against certain of its officers and directors asserting claims for

12  breach of fiduciary duty, abuse of control, gross mismanagement, waste of corporate

13  assets, unjust enrichment, constructive trust, rescission, an accounting, and violations

14  of California Corporations Code §§25402, 25403.  On June 2, 2006, the State Court

15  consolidated all five of the state derivative actions (all consolidated as *Fred*

16  *Greenberg, et al. v. Louis R. Tomasetta, et al.*, Superior Court of California, Ventura

17  County, Case No. CIV 24083) ("State Derivative Action") and appointed Robbins

18  Umeda & Fink LLP, Faruqi & Faruqi LLP, and Gardy & Notis LLP as Co-Lead

19  Counsel for the State Derivative Plaintiffs.  On July 28, 2006, the State Derivative

20  Plaintiffs filed a consolidated shareholder derivative complaint (the "State Derivative

21  Complaint").  Collectively the Federal Derivative Action and the State Derivative

22  Action are referred to as the "Federal and State Derivative Actions.")

23      The Federal and State Derivative Complaints alleged that the Defendants

24  actively participated in, acquiesced in, and/or failed to uncover and prevent the

25  issuance, approval and exercise of millions of dollars in stock options with

26  manipulated grant dates.  The Federal and State Derivative Complaints alleged that

27  under this "backdating" scheme, the grant dates of the options were changed from the

28  actual grant date to a date at or near the low for the price of Vitesse stock around the

1   time of the grant, allowing the option recipients to realize hidden, windfall income.
2   The Federal and State Derivative Complaints also alleged that defendants had engaged
3   in accounting manipulations, primarily related to revenue recognition and inventory.
4   The Federal and State Derivative Complaints further alleged that this misconduct has
5   caused severe harm to Vitesse, including the restatement of years of its financial
6   statements; potentially huge negative tax consequences; government investigations;
7   potential civil penalties and/or criminal prosecution; and the intangible, long-term
8   harm to its once valuable reputation and credibility. Defendants deny any allegations
9   of wrongdoing.

10      For nearly five months, the parties engaged in extensive negotiations regarding
11  a potential settlement of the Federal and State Derivative Actions. To that end,
12  counsel for plaintiffs in the Federal and State Derivative Actions and Defendants
13  participated in six separate mediation sessions with Justice Howard B. Weiner (Ret.),
14  a highly skilled and experienced mediator. In addition to these sessions, Justice
15  Weiner presided over numerous telephonic conferences with and among the parties.
16  As a result of these settlement discussions, telephonic conferences and mediations, the
17  parties ultimately agreed to terms contained herein.

18      **B.    Benefits to Vitesse from the Settlement**

19      Following the analysis described above, Lead Federal Derivative Plaintiff's
20  Counsel engaged in arm's-length negotiation with counsel for the Defendants and
21  Vitesse with a view to achieving the benefits set forth herein. Lead Federal Derivative
22  Plaintiff's Counsel believe that the Settlement provides an excellent outcome for
23  Vitesse based upon the claims asserted against the Defendants, the evidence
24  developed, and the recoverable damages that might be proven at trial. First, Vitesse
25  will benefit from meaningful corporate governance reform that meets, and in some
26  instances exceeds, the corporate governance requirements being considered by various
27  regulatory bodies. Second, the monetary and stock recovery provides the Company
28  with substantial means to fund the cost of resolving the Class Action and, therefore,

10

1  benefits the Company's shareholders.  Vitesse will contribute no cash to settle the

2  Class Action.  Based on their analysis, as set forth above, Lead Federal Derivative

3  Plaintiff's Counsel have concluded that the terms and conditions of the Settlement are

4  fair, reasonable and adequate to the Company and its shareholders, and in their best

5  interests, and have agreed to settle the claims asserted in the Federal Derivative Action

6  pursuant to the terms and provisions of a detailed Amended Stipulation and

7  Agreement of Settlement dated as of October 5, 2007 (the "Stipulation"), after

8  considering: (i) the substantial benefits that the Company and its shareholders will

9  receive from the settlement of the Federal Derivative Action; (ii) the attendant risks of

10  continued litigation, especially in complex actions such as this Federal Derivative

11  Action, as well as the difficulties and delays inherent in such litigation; and (iii) the

12  desirability of permitting the Settlement to be consummated, as provided by the terms

13  of the Stipulation.  Vitesse has acknowledged the substantial benefits conferred on it

14  by the Settlement.

15  **C.    The Defendants' Denial of Wrongdoing**

16  The Defendants deny any wrongdoing, and nothing in the Stipulation shall be

17  construed or deemed to be evidence of, or an admission or concession on the part of

18  Vitesse or any Defendants, or as evidence, of the truth or validity of any of the

19  allegations in the Federal Derivative Action, or of any liability, fault, or wrongdoing

20  of any kind or any infirmity in the defenses that the Defendants could have asserted.

21  The Defendants assert that they complied with all applicable laws and regulations,

22  deny that they have committed any act or omitted to perform any act that gives rise to

23  any liability and/or violation of securities law or breach of fiduciary duties, and state

24  that they are entering into this Settlement to eliminate the burden and expense of

25  further litigation.   The Defendants do not dispute, however, that the Federal

26  Derivative Action is being voluntarily settled upon the advice of counsel; and that the

27  terms of the Settlement are fair, adequate and reasonable.  The Stipulation shall not be

28

**1 1**

1  construed or deemed to be a concession by any party of any infirmity in, or validity of,

2  the claims asserted in either the Federal or State Derivative Action.

3  **II.    TERMS OF THE PROPOSED SETTLEMENT**

4         The full terms and conditions of the Settlement are embodied in the Stipulation,

5  which is on file with the Court.  The following is a summary of the Stipulation.

6         **A.    Corporate Governance Provisions**

7         Vitesse's Board of Directors (the "Board") has agreed to approve the adoption

8  of certain corporate governance provisions, which are designed to assure the

9  independence of the Board and several of its principal committees, improve its

10 compensation policies and procedures, accounting practices and the procedures for

11 evaluating shareholder proposals.  The provisions are the result of arm's-length

12 negotiation between Lead Federal Derivative Plaintiff and Vitesse by their respective

13 counsel. The Defendants have acknowledged that they were aware of and considered

14 Derivative Plaintiff's allegations and demands in connection with the Board's decision

15 to adopt the provisions referenced above.  Subsequent to the filing of the Federal

16 Derivative Action, the Board agreed to adopt the corporate governance measures

17 described in Exhibit A hereto as a result of this Settlement and the prosecution of this

18 Federal Derivative Action.

19        **B.    Monetary Consideration**

20        The Defendants and their directors' and officers' liability insurers also have

21 agreed that $10,200,000 in cash will be paid to be utilized for the settlement of the

22 Class Action, as follows:

| | |
|---|---|
| 23  Directors and Officers Liability Insurers: | $8,750,000 |
| 24  Louis R. Tomasetta: | $1,200,000 |
| 25  Eugene F. Hovanec: | $  250,000 |
| 26  Vitesse: | $      0 |

27        In addition, 3,922,669 shares of Vitesse common stock will be contributed as

28 further consideration for the settlement of the Class Action as follows:

| | |
|---|---|
| Vitesse: | 2,650,000 shares |
| Louis R. Tomasetta: | 814,655 shares |
| Eugene F. Hovanec: | 458,014 shares |

Defendants Lamond, Rodgers, Chan, Cole, Daly, Gavrielov, Lewis, Rogas and Mody will make no direct payment as part of the settlement of this action or the Class Action. However, each of these individuals is a named insured under the two directors' and officers' liability insurance policies from which $8,750,000 is being paid as part of the settlement consideration for this action and the Class Action. Furthermore, as described in more detail below in §III "Releases," Defendants Tomasetta, Hovanec and Mody will release certain potential claims against Vitesse for indemnification which is a substantial benefit to Vitesse. Additional Terms

Vitesse and Lead Federal Derivative Plaintiff's Counsel have agreed to jointly prosecute any claims against KPMG that have been or could be asserted on behalf of the Company in the Federal Derivative Action. However, Vitesse shall retain the ultimate decision making as to the resolution of such claims, including whether to pursue such claims in the first instance. In connection with the joint prosecution of the claims against KPMG which have been or could be asserted directly or indirectly on behalf of Vitesse relating to or arising out of the allegations in the Federal Derivative Action, Vitesse agrees to pay Five Percent (5%) of the total of any recovery collected from KPMG to Derivative Plaintiff's Counsel within five days of collection.

## III.  RELEASES

The full terms of the Dismissal and Release of Claims are set forth in the Stipulation. The following is only a summary.

Upon the Effective Date of the Settlement, Vitesse, the Derivative Plaintiff and all Current Vitesse Shareholders will release the Released Claims against the Released Persons, both as defined below. Moreover, the judgment to be entered upon approval of the Settlement will preclude the filing of any action purporting to litigate the

13

1  Released Claims against the Released Persons.  Upon the Effective Date, each of the
2  Defendants will release claims against Vitesse, the Lead Federal Derivative Plaintiff,
3  each and all of the Current Vitesse Shareholders and Lead Federal Derivative
4  Plaintiff's Counsel from all claims relating to or arising out of, or connected with the
5  institution, prosecution, assertion, settlement or resolution of the Federal Derivative
6  Action and/or the Released Claims.

7       "Released Claims" means any and all claims, debts, demands, rights or causes
8  of action or liabilities (including, but not limited to, any claims for gross negligence,
9  recklessness, intentional conduct, damages, interest, attorneys' fees, expert or
10 consulting fees, and any other costs, expenses or liability), without regard to the
11 subsequent discovery or existence of such different or additional facts, including both
12 known claims and Unknown Claims (as defined below) whether based on federal,
13 state, local, statutory or common law or any other law, rule or regulation, whether
14 fixed or contingent, suspected or unsuspected, whether or not concealed or hidden,
15 accrued or un-accrued, liquidated or un-liquidated, at law or in equity, matured or un-
16 matured: (i) that have been asserted in either the Federal Derivative Action or the
17 State Derivative Action by any of the plaintiffs in those actions, or any of their
18 attorneys, against any of the Released Persons; or (ii) that could have been asserted in
19 the Federal Derivative Action or the State Derivative Action by any of the plaintiffs in
20 those actions, or any of their attorneys or successors and assigns, against any of the
21 Released Persons which arise out of or are based upon or relate to the allegations,
22 transactions, facts, matters or occurrences, representations or omissions involved, set
23 forth, or referred to in any of the complaints filed in the Federal Derivative Action and
24 the State Derivative Action.

25      "Released Persons" means Defendants, Nominal Defendant and the Related
26 Parties.  "Related Parties" means any Defendants' or Nominal Defendant's past or
27 present directors, officers, employees, partners, insurers, co-insurers, reinsurers,
28 agents, controlling shareholders, attorneys, personal or legal representatives,

14

1  predecessors, successors, parents, subsidiaries, divisions, joint ventures, assigns,
2  spouses, heirs, related or affiliated entities, any entity in which a Defendant or the
3  Nominal Defendant has a controlling interest, any members of a Defendant's
4  immediate family, any trust of which any Defendant or Nominal Defendant is the
5  settlor or which is for the benefit of a Defendant's family, and all officers, directors,
6  employees and insurers of Vitesse's current and former subsidiaries. The Released
7  Persons and the Related Parties do not include "KPMG," Vitesse's former auditor
8  (KPMG LLP) and each of its auditors, partners, officers, directors, employees,
9  predecessors, successors, parents, subsidiaries, affiliates, custodians, agents, assigns,
10 and representatives, including but not limited to KPMG International. Vitesse
11 expressly reserves, retains and does not release any and all claims against KPMG.

12    Upon the Effective Date, Defendants Louis R. Tomasetta, Eugene F. Hovanec,
13 and Yatin Mody will release all future claims (*i.e.*, after the date of the Stipulation and
14 Agreement of Settlement) for indemnity against Vitesse in connection with
15 investigations by the United States Attorney's Office for the Southern District of New
16 York and the U.S. Securities and Exchange Commission, Division of Enforcement.

17    "Unknown Claims" means any Released Claims which Lead Federal Derivative
18 Plaintiff, each of the Current Vitesse Shareholders, or Vitesse do not know or suspect
19 to exist in his, her or its favor at the time of the release of the Released Persons which,
20 if known by him, her or it, might have affected his, her or its settlement with, and
21 release of, the Released Persons or might have affected his, her or its decision not to
22 object to this Settlement. With respect to any and all Released Claims, the Settling
23 Parties stipulate and agree that, upon the Effective Date, the Lead Federal Derivative
24 Plaintiff, each of the Current Vitesse Shareholders, and Vitesse shall be deemed to
25 have, and by operation of the Judgment shall have, waived the provisions, rights and
26 benefits of California Civil Code §1542, which provides:

27    A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH
      THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN
28    HIS OR HER FAVOR AT THE TIME OF EXECUTING THE

15

RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

The Lead Federal Derivative Plaintiff, each of the Current Vitesse Shareholders, and Vitesse shall be deemed to have, and by operation of the Judgment shall have, waived any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to California Civil Code §1542.   The Lead Federal Derivative Plaintiff, each of the Current Vitesse Shareholders, and Vitesse may hereafter discover facts in addition to or different from those which he, she or it now knows or believes to be true with respect to the Released Claims but the Lead Federal Derivative Plaintiff, each of the Current Vitesse Shareholders, and Vitesse upon the Effective Date, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released any and all Released Claims known or unknown, suspected or unsuspected, contingent or non-contingent, accrued or unaccrued, whether or not concealed or hidden, which now exist, or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts.   The Lead Federal Derivative Plaintiff, each of the Current Vitesse Shareholders, and Vitesse shall be deemed by operation of the Judgment to have acknowledged that the foregoing waivers were separately bargained for and are key elements of the Settlement of which this release is a part.

## IV.   ATTORNEYS' FEES AND EXPENSES

In addition to the potential payment described in ¶III.C. above, the Stipulation of Settlement provides for the payment by Vitesse of 4,900,000 shares of Vitesse common stock for all attorneys' fees and expenses of all counsel to plaintiffs in both the Federal Derivative Action and the State Derivative Action.   While the price of

1 6

1  Vitesse common stock fluctuates, based on its current trading price of about $1 per
2  share, the dollar value of this payment for all fees and expenses is approximately
3  $4,900,000.

4  **V.    THE HEARING AND YOUR RIGHTS AS SHAREHOLDERS**

5      A hearing will be held on March 17, 2008, at 10:00 a.m. before the Honorable
6  Manuel L. Real, United States District Judge, at the United States Courthouse, 312
7  North Spring Street, Los Angeles, California, for the purpose of determining: (i)
8  whether the Settlement of the Federal Derivative Action on the terms and conditions
9  provided for in the Stipulation, including the provision for the payment of attorneys'
10  fees and expenses to cover all attorneys' fees and expenses of all counsel to plaintiffs
11  in both the Federal Derivative Action and the State Derivative Action, is fair,
12  reasonable and adequate to the Current Vitesse Shareholders and to Vitesse and
13  should be approved by the Court; and (ii) whether a Judgment as provided for in ¶1.7
14  of the Stipulation should be entered herein. The hearing may be adjourned from time
15  to time by the Court at the hearing or any adjourned session thereof without further
16  notice other than by announcement of such adjournment.

17      Any current beneficial owner of the shares of Vitesse common stock may
18  appear at the hearing and be heard as to whether the proposed Settlement should be
19  approved, *provided, however,* that no such beneficial owner shall be heard unless, on
20  or before February 25, 2008, his, her or its objection or opposition is made in writing
21  and is filed with the Court at the address shown below, together with copies of any
22  supporting papers and briefs upon which he, she or it intends to rely and a sworn
23  statement attesting to the date of purchase by such beneficial owner of his, her or its
24  Vitesse common stock and his, her or its continued ownership thereof.  In addition,
25  such beneficial owner shall show due proof of service, on or before the aforesaid date,
26  of copies of such objection or opposition, supporting papers and briefs, and proof of
27  purchase and continued ownership of Vitesse common stock upon each of the
28  following:

17

1 CLERK
 UNITED STATES DISTRICT COURT
2 CENTRAL DISTRICT OF CALIFORNIA
 WESTERN DIVISION
3 312 North Spring Street
 Los Angeles, CA 90012

4

5 COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP
 KEITH F. PARK
6 DARREN J. ROBBINS
 TRAVIS E. DOWNS III
7 BENNY C. GOODMAN III
 655 West Broadway, Suite 1900
8 San Diego, CA 92101

9 Lead Federal Derivative Plaintiff's Counsel

10 KATTEN MUCHIN ROSENMAN LLP
 BRUCE G. VANYO
11 ANISSA D. SEYMOUR
 MARISA WESTERVELT
12 2029 Century Park East, Suite 2600
 Los Angeles, CA 90067-6042

13

14 Attorneys for Defendants Vincent Chan, James A.
 Cole, Alex Daly, John C. Lewis, and Thurman J.
 Rodgers

15

16 O'MELVENY & MYERS LLP
 SETH ARONSON
17 DAVID I. HURWITZ
 MARC S. WILLIAMS
 TRISTAN SORAH-REYES
18 400 South Hope Street
 Suite 1060
19 Los Angeles, CA 90071-2899

20 Attorneys for Defendants Moshe Gavrielov,
 Edward Rogas, Jr., and Nominal Defendant
21 Vitesse Semiconductor Corporation

22 MICHAEL GREEN
 VICE PRESIDENT, GENERAL COUNSEL
23   AND SECRETARY
 VITESSE SEMICONDUCTOR CORPORATION
24 741 CALLE PLANO
 CAMARILLO, CA 93012

25

26 Attorney for Nominal Defendant Vitesse
 Semiconductor Corporation

27

28

18

1   HELLER EHRMAN LLP
    SARA B. BRODY
2   HOWARD CARO
    MADELEINE LOH
3   333 Bush Street, Suite 3100
    San Francisco, CA  94104-2878
4
    Attorney for Defendant Eugene F. Hovanec
5
    MORRISON & FOERSTER, LLP
6   DAN MARMALEFSKY
    JAMES P. MANISCALCO
7   555 West Fifth Street
    Suite 3500
8   Los Angeles, CA  90013-1024
9   Attorney for Defendant Louis R. Tomasetta
10  IRELL & MANELLA LLP
    DAVID SIEGEL
11  DANIEL LEFLER
    GLENN VANZURA
12  1800 Avenue of the Stars
    Suite 900
13  Los Angeles, CA  90067-4276
14  Attorney for Defendant Yatin Mody
15  WILSON SONSINI GOODRICH &
      ROSATI, P.C.
16  NINA LOCKER
    650 Page Mill Road
17  Palo Alto, CA  94304-1050
18  Attorney for Defendant Pierre R. Lamond
19      Any Vitesse shareholder who does not make his, her or its objection or
20  opposition in the manner provided herein shall be deemed to have waived any and all
21  objections and opposition, and shall be forever foreclosed from making any objection
22  to the fairness, reasonableness and adequacy of the proposed Settlement.
23  **VI.   DISMISSAL & RELEASE**
24      Should the Settlement be approved by the Court following the Settlement
25  Hearing, the Court will enter a Final Order and Judgment that:
26      1.   Approves the Settlement as fair, reasonable and adequate to Vitesse and
27  its shareholders;
28

                                    - 13 -                                    19

2.     Releases and discharges each of the Released Persons from any and all liability with respect to the Released Claims, except that Vitesse will retain claims against KPMG;

3.     Releases and discharges all future claims (*i.e.*, after the date of this Stipulation and Agreement of Settlement) for indemnity by Defendants Louis R. Tomasetta, Eugene F. Hovanec, and Yatin Mody against Vitesse in connection with investigations by the United States Attorney's Office for the Southern District of New York and the U.S. Securities and Exchange Commission, Division of Enforcement; and

4.     Permanently bars and enjoins the institution or prosecution against the Released Parties of any action asserting or relating in any way to the Released Claims.

## VII.   SPECIAL NOTICE TO NOMINEES

If you hold any Vitesse common stock as nominee for a beneficial owner who owned Vitesse common stock on October 5, 2007, then, within ten (10) days after you receive this Notice, you must either: (1) send a copy of this Notice by first class mail to all such Persons; or (2) provide a list of the names and addresses of such Persons to the Notice Administrator:

> Vitesse Derivative Litigation
> Notice Administrator
> c/o Gilardi & Co. LLC
> P.O. Box 5100
> Larkspur, CA  94977-5100

If you choose to mail the Notice yourself, you may obtain from the Notice Administrator (without cost to you) as many additional copies of these documents as you will need to complete the mailing.

Regardless of whether you choose to complete the mailing yourself or elect to have the mailing performed for you, you may obtain reimbursement for or advancement of reasonable administrative costs actually incurred or expected to be incurred in connection with forwarding the Notice and which would not have been

2 0

1   incurred but for the obligation to forward the Notice, upon submission of appropriate

2   documentation to the Notice Administrator.

3   **VIII.  EXAMINATION OF PAPERS AND INQUIRIES**

4         For a more detailed statement of the matters involved in this Federal Derivative

5   Action, reference is made to the pleadings, to the Stipulation and to all other papers

6   publicly filed in the Federal Derivative Action, which may be inspected at the Office

7   of the Clerk for the United States District Court for the Central District of California,

8   Western Division, 312 North Spring Street, Los Angeles, California, during regular

9   business hours of each business day.

10         Any inquiry concerning the Federal Derivative Action should be addressed to a

11   representative of Lead Federal Derivative Plaintiff's Counsel: Coughlin Stoia Geller

12   Rudman & Robbins LLP, 655 W. Broadway, Suite 1900, San Diego, California

13   92101, Attention: Rick Nelson.

14           PLEASE DO NOT ADDRESS INQUIRIES TO THE COURT

15   DATED: _____          BY ORDER OF THE COURT
                                     UNITED STATES DISTRICT COURT
16                                   CENTRAL DISTRICT OF CALIFORNIA
17                                   WESTERN DIVISION

18   S:\Settlement\Vitesse.set\11-16-07 Final Revised Documents\12-19 CLEAN v8 - Derivative Action - Notice of Proposed Settlement of Shareholder Derivative.doc

19

20

21

22

23

24

25

26

27

28

21

EXHIBIT A

**EXHIBIT A**

**CORPORATE GOVERNANCE POLICIES**

Within 30 days of the issuance of an order approving the settlement of this action, the Board of Directors of Vitesse Semiconductor Corporation (the "Company") will adopt resolutions and amend committee charters to ensure adherence to the following Corporate Governance Policies. The Company agrees that the governance provisions included herein will remain in effect for no less than seven years. The provisions detailed herein shall apply to the members of the Board of Directors of the Company only as to their service on that Board.

1.    **COMPENSATION POLICIES AND PROCEDURES**

(a)    The Board shall establish a comprehensive and responsible set of assumptions, policies and procedures for determining all cash and non-cash compensation, including bonuses, stock options, grants and benefits such as health care, use of company vehicles, memberships, travel for friends, relatives or personal trips, personal housing, and tax or legal services paid for or provided by the Company.

(b)    Option grants, stock grants and warrants issued to persons subject to Section 16 of the Securities Exchange Act will be disclosed via a filing with the Securities and Exchange Commission (the "SEC") within the time period required by Section 16 of the Securities Exchange Act and the rules promulgated thereunder.

(c)    Repricing of stock options shall be prohibited.

2.    **STOCK OPTION PLANS**

(a)    Any stock option or other similar plan shall provide an objective, measurable and fair mechanism for pricing stock options.

(b)    All plans shall clearly define the exercise price and the fair market value of stock (e.g., the closing price on a specified date, or the average closing price over a specified period).

      (c)    Executive officers shall be prohibited from determining the date of any option award. The grant date shall be the same date the Compensation Committee (or its lawful designee) takes action.

      (d)    Any new stock option or other similar plan shall provide (and any existing such plans shall be administered to provide) that the grant date of any option will be the date of the action by the Compensation Committee or the Board granting the option and the exercise price or value of the award will not be determined by reference to the fair market value of the Company's stock on any date other than the grant date of the award, except that awards of incentive stock options may have an exercise price equal to the closing price of the Company's stock on the day prior to the grant date. Stock options will not be discounted below fair market value.

      (e)    The fair market value of the Company's stock on any date shall be the closing sales price of the Company's stock on Nasdaq Global Market or, if the Company's stock is not then quoted on Nasdaq Global Market but is quoted on another Nasdaq system, the reported closing sale price of the Company's stock on such system or, if there is no such reported closing price, the mean between the last bid and asked prices for the Company's stock.

      (f)    The Company shall comply with legal requirements for proper disclosure and proper accounting.

      (g)    The Company shall provide appropriate documentation for proper disclosure and accounting.

      (h)    The Company shall identify who is responsible for assisting option grantees with compliance with applicable laws and regulations (e.g., timely and accurate filing of SEC Forms 3, 4 and 5), and shall provide effective monitoring mechanisms to ensure that such laws, and the plans, are followed.

(i)     The process for granting executive non-cash compensation shall have the same transparency and be consistent with the process and methodology for determining executive cash compensation.

**3.      GRANTING OF STOCK OPTION AWARDS**

(a)     Authority to grant stock option awards should be limited to the full Board or a properly constituted Compensation Committee.  Both the full Board and the Compensation Committee shall be comprised of an independent majority.

(b)     All grants shall be made only at a meeting of the Board or Compensation Committee and not by unanimous written consent.  Minutes shall promptly be prepared for all such meetings.

**4.      TIMING OF OPTION GRANTS**

(a)     All stock options shall be granted only within open periods for trading under the Company's insider trading policy.

(b)     The only exception to §IV(a) above shall be stock options awarded in connection with the hiring of a new employee.

(c)     Discussion of how and why an option grant date was chosen must be provided in the CD&A.

(d)     Executive officers shall be prohibited from determining the date of any option award.

**5.      SHAREHOLDER NOMINATED DIRECTOR**

(a)     The Board shall establish a procedure, in consultation with Lead Derivative Counsel's corporate governance expert, to nominate one person to become a director of the Company.  That director shall serve on at least one of the following committees of the Board:

(i)     Compensation Committee

(ii)    Audit Committee

(iii)   Nominating and Corporate Governance Committee

2 4

(b)   The procedure for identifying and nominating this director shall include the following:

(i)   Within 60 days of the issuance of an order approving the settlement of the Derivative litigation, the Nominating and Corporate Governance Committee, in consultation with Lead Derivative Counsel's corporate governance expert, shall establish a set of objective criteria to be utilized in conducting the canvassing efforts detailed below.

(ii)   Each individual or entity known to the Company or Lead Derivative Counsel's corporate governance expert to have continuously held at least 1% of the Company's common stock for at least one year will be contacted within 90 days of the establishment of the criteria detailed in (i) above for the purpose of requesting that such shareholder(s) provide the name(s) of candidates for the Board.

(iii)   An appropriate review, including background information and interviews of prospective candidates, will be conducted jointly by a designee of the Nominating and Corporate Governance Committee and Lead Derivative Counsel's corporate governance expert.

(iv)   The designee of the Nominating and Corporate Governance Committee and Lead Derivative Counsel's corporate governance expert, shall identify qualified candidates from those identified and reviewed and jointly submit such qualified candidates to the Nominating and Corporate Governance Committee.

(c)   Once appropriate qualified candidate(s) are identified and recommended by the Nominating and Corporate Governance Committee, the Board shall appoint at least one such candidate to the Board or nominate such candidate(s) for election by the shareholders, in each case subject to the fiduciary duties of the Board.

(d)    If the director elected as set forth above is removed or is no longer able to serve on the Board, the process described above shall be repeated for the selection of a replacement director.

## 6.    DIRECTOR INDEPENDENCE

At least three-fourths of the members of the Board shall be "independent directors," as defined under the rules of the SEC and any applicable stock exchange on which the Company's stock is then traded.   In addition, to be deemed "independent" in any fiscal year, a director would also have to satisfy the following qualifications:

(a)    has not been employed as an elected officer of the Company or its subsidiaries within the last five fiscal years;

(b)    has not received, during the current fiscal year or any of the three immediately preceding fiscal years, remuneration, directly or indirectly, other than *de minimus* remuneration, as a result of service as, or compensation paid to an entity affiliated with the director that serves as, (i) an advisor, consultant, or legal counsel to the Company or to a member of the Company's senior management; or (ii) a significant customer or supplier of the Company;

(c)    has no personal services contract(s) with the Company, or any member of the Company's senior management;

(d)    is not affiliated with a not-for-profit entity that receives significant contributions from the Company;

(e)    has no interest in any investment that overlaps with an investment that the Company has (equity, debt or hybrid);

(f)    during the current fiscal year or any of the three immediately preceding fiscal years, has not had any business relationship with the Company for which the Company has been required to make disclosure under Regulation S-K of the SEC, other than for service as a director or for which relationship no more than *de*

*minimus* remuneration was received in any one such year; provided, however, that the need to disclose any relationship that existed prior to a director joining the Board shall not in and of itself render the director non-independent;

      (g)    is not employed by a public company at which an executive officer of the Company serves as a director;

      (h)    is not a member of the immediate family of any person described in subsections (a)-(g) above; and

      (i)    a director is deemed to have received remuneration (other than remuneration as a director, including remuneration provided to a non-executive Chairman of the Board, Committee Chairman, or Lead Director), directly or indirectly, if remuneration, other than *de minimis* remuneration, was paid by the Company or its subsidiaries to any entity in which the director has a beneficial ownership interest of five percent or more, or to an entity by which the director is employed other than as a director. Remuneration is deemed *de minimis* remuneration if such remuneration is $40,000 or less in any fiscal year, or if such remuneration is paid to an entity, it (i) did not for the fiscal year exceed the lesser of $1 million or five percent (5%) of the gross revenues of the entity; and (ii) did not directly result in a material increase in the compensation received by the director from that entity.

### 7.    MEETINGS IN EXECUTIVE SESSION

The Board shall hold an executive session at each meeting of the Board at which employee directors are not present.

### 8.    LEAD INDEPENDENT DIRECTOR

The independent members of the Board shall annually elect by secret ballot an independent director to act in a lead capacity to coordinate the other independent directors, as described below. The Lead Director may also serve as Chairman of the Board. The Lead Independent Director is responsible for coordinating the activities of the independent directors. In addition to the duties of all Board members (which shall

not be limited or diminished by the Lead Independent Director's role), the specific responsibilities of the Lead Independent Director are to advise the Chairman of the Board (if the Lead Director is not also the Chairman of the Board) or to undertake the following:

      (a)    determine an appropriate schedule of Board meetings, seeking to ensure that the independent directors can perform their duties responsibly while not interfering with the flow of the Company's operations;

      (b)    cause to be prepared, after consultation with management, agendas for the Board and Committee meetings; and

      (c)    coordinate, develop the agenda for, and moderate executive sessions of the Board's independent directors, and act as principal liaison between the independent directors and the Chairman of the Board and/or Chief Executive Officer on sensitive issues.

The Lead Independent Director shall have the authority to retain such counsel or consultants as the Lead Independent Director deems necessary to perform his or her responsibilities.

**9.**    **ACCOUNTING OVERSIGHT**

      (a)    The Company shall maintain an independent audit committee (the members of which shall be independent, non-employee directors), which reports directly to the Board, not executive officers.

      (b)    All members of the audit committee should have a financial background.

      (c)    Provide a whistleblower telephone hotline.

      (d)    Adopt written policies protecting whistleblowers in the employee handbook provided to every employee when hired and provide such handbook (or a notice that the handbook is available on the Company's intranet) to all existing

employees within 60 days of the issuance of an order approving the settlement of this action.

### 10.    CFO QUARTERLY FINANCIAL REVIEW

At each regularly scheduled Board of Directors meeting, the Company's Chief Financial Officer shall provide a report that includes, if then available, year-to-date financial results and quarterly or quarter-to-date financial results that include the Company's financial condition, including but not limited to, as appropriate under the circumstances, a discussion of all reasons for material increases in expenses and liabilities, if any, and material decreases in revenues and earnings, if any, including any modification or adjustment of reserve accounts or contingencies and management's plans for ameliorating or reversing such negative trends and the success or failure of any such plans presented in the past.

### 11.    REVENUE RECOGNITION POLICY

The Chief Executive Officer and Chief Financial Officer shall be responsible for ensuring that the Company's revenue recognition policy conforms to the requirements of Generally Accepted Accounting Principles, as currently in effect or as amended, and is implemented and utilized throughout the Company. The Chief Executive Officer and Chief Financial Officer shall report to the Board of Directors or the Audit Committee on a semi-annual basis regarding the implementation and operation of this policy. The Chief Executive Officer and Chief Financial Officer shall ensure that the Company's revenue recognition policy is distributed to each Company employee who records or reviews the recording of revenue and shall have each such employee confirm that he or she understands and will execute this policy. Any questions regarding that policy, or its application, shall be directed to the Company's Chief Financial Officer, who shall, as appropriate, inform the Chief Executive Officer.

## 12. FORFEITURE OF BONUSES AND PROFITS FROM STOCK SALES

The Board shall implement a plan and require the Company's Chief Executive Officer and Chief Financial Officer to agree in writing to a provision whereby they shall disgorge to the Company certain bonus payments and profits under the following circumstances:

(a)     If the Company is required to prepare an accounting restatement to correct an accounting error on an interim or annual financial statement included in a report on Form 10-Q or Form 10-K, due to material noncompliance with any financial reporting requirement under the federal securities laws, the Board shall determine whether the restatement was caused by misconduct of the Chief Executive Officer or the Chief Financial Officer; and

(b)     If the Board determines that misconduct by the Chief Executive Officer or Chief Financial Officer has occurred and caused such restatement, reimbursement shall be made to the Company from the responsible Chief Executive Officer or Chief Financial Officer for:

(i)     any bonus or other incentive-based or equity-based compensation received by the responsible Chief Executive Officer or Chief Financial Officer from the Company during the 12-month period following the first public issuance or filing with the SEC (whichever first occurs) of the financial document embodying such error; and

(ii)     any net profits realized by the responsible Chief Executive Officer or Chief Financial Officer from the sale of the Company's stock during that 12-month period.

## 13. SHAREHOLDER PROPOSALS

All shareholder proposals shall be evaluated by a committee of at least three independent directors, chaired by the Chairman. Such committee shall determine,

with the assistance of outside advisors, if necessary, whether the shareholder proposal is in the best interest of the Company and meets the requirements of the SEC. The committee shall recommend to the Board for or against such shareholder proposal and the reasons for such recommendation. If the proposal is included in the proxy statement, the Board shall recommend for or against such proposal and the reason for such recommendation in that proxy statement.

### 14.   ATTENDANCE AT SHAREHOLDER MEETINGS

It shall be the policy of the Company, disclosed in its proxy statement, that absent extraordinary circumstances, each member of the Board of Directors shall attend each annual shareholder meeting in person.

S:\Settlement\Vitesse.set\11-16-07 Final Revised Documents\12-19 CLEAN v6 - Derivative Action - Exhibit C - Corporate Governance Terms.doc

31

1  COUGHLIN STOIA GELLER
     RUDMAN & ROBBINS LLP
2  KEITH F. PARK (54275)
   DARREN J. ROBBINS (168593)
3  TRAVIS E. DOWNS III (148274)
   BENNY C. GOODMAN III (211302)
4  655 West Broadway, Suite 1900
   San Diego, CA 92101
5  Telephone: 619/231-1058
   619/231-7423 (fax)
6  keithp@csgrr.com
   darrenr@csgrr.com
7  travisd@csgrr.com
   bgoodman@csgrr.com
8
   Lead Federal Derivative Plaintiff's Counsel
9
                  UNITED STATES DISTRICT COURT
10
                CENTRAL DISTRICT OF CALIFORNIA
11
                        WESTERN DIVISION
12
13  JOSEPH GUNTHER, Derivatively on   )  No. 2:06-cv-02529-R(CTx)
    Behalf of VITESSE SEMICONDUCTOR  )  (And All Consolidated Actions)
    CORPORATION,                      )
14                                    )  Derivative Action
                        Plaintiff,    )
15                                    )  SUMMARY NOTICE OF
          vs.                         )  PROPOSED SETTLEMENT OF
16                                    )  DERIVATIVE ACTION
    LOUIS R. TOMASETTA, et al.,       )
17                                    )  EXHIBIT A-2
                        Defendants,   )
18                                    )
          – and –                     )
19                                    )
    VITESSE SEMICONDUCTOR            )
20  CORPORATION, a Delaware           )
    corporation,                      )
21                                    )
                  Nominal Defendant.  )
22  _____ )
23
24
25
26
27
28

                                                            3 2

1 **TO: ANY PERON WHO OWNED VITESSE SEMICONDUCTOR CORPORATION ("VITESSE") COMMON STOCK AS OF OCTOBER 5, 2007 ("CURRENT VITESSE SHAREHOLDER")**

2

3 YOU ARE HEREBY NOTIFIED that pursuant to an Order of the United States

4 District Court for the Central District of California, Western Division, a hearing will

5 be held on March 17, 2008, at 10:00 a.m., before the Honorable Manuel L. Real,

6 United States District Judge, United States Courthouse, Courtroom 8, 312 North

7 Spring Street, Los Angeles, California, for the purpose of determining whether the

8 proposed settlement of the above captioned derivative action (the "Federal Derivative

9 Action") should be approved as fair, reasonable and adequate and whether a judgment

10 dismissing the Federal Derivative Action should be entered. In connection with the

11 Settlement, Vitesse has adopted a variety of corporate governance measures that relate

12 to and address many of the underlying issues in the Federal Derivative Action, and

13 Vitesse officers and directors are being released from liability to Vitesse. In addition,

14 the settlement provides cash and Vitesse stock to be used by Vitesse to settle a related

15 class action filed against Vitesse with no cash consideration from Vitesse. The

16 settlement also provides for the joint prosecution (by counsel to Vitesse and the

17 derivative plaintiff) of claims against third parties. Finally, the settlement provides for

18 the payment of derivative plaintiff's counsel's fees and expenses in Vitesse stock.

19 **IF YOU ARE A CURRENT OWNER OF VITESSE COMMON STOCK YOUR**

20 **RIGHTS MAY BE AFFECTED BY PROCEEDINGS IN THE DERIVATIVE**

21 **ACTION.** A more detailed form of notice describing the Settlement may have already been

22 mailed to you. If you have not received the detailed notice, you may obtain a copy of it by

23 identifying yourself as a current owner of Vitesse common stock and writing to:

24

25 *Vitesse Derivative Litigation*
c/o Gilardi & Co. LLC
P.O. Box 5100
26 Larkspur, CA 94977-5100

27

28

3 3

1    Inquiries, other than requests for the detailed form of notice, may be made to a

2    representative of Lead Federal Derivative Plaintiff's Counsel:

3
4            Rick Nelson
             Shareholder Relations
5            COUGHLIN STOIA GELLER
               RUDMAN & ROBBINS LLP
6            655 W. Broadway, Suite 1900
             San Diego, CA 92101
7            1-800-449-4900

8    Any objection to the settlement must be filed with the Court no later than

9    February 25, 2008 and *received* by the following no later than February 25, 2008:

10           COUGHLIN STOIA GELLER
               RUDMAN & ROBBINS LLP
11           KEITH F. PARK
             TRAVIS E. DOWNS III
12           BENNY C. GOODMAN III
             655 West Broadway, Suite 1900
13           San Diego, CA  92101

14           Lead Federal Derivative Plaintiff's Counsel

15           KATTEN MUCHIN ROSENMAN LLP
             BRUCE G. VANYO
16           ANISSA D. SEYMOUR
             MARISA WESTERVELT
17           2029 Century Park East, Suite 2600
             Los Angeles, CA  90067-6042
18

19           Attorneys for Defendants Vincent Chan, James A.
             Cole, Alex Daly, John C. Lewis, and Thurman J.
20           Rodgers

21           O'MELVENY & MYERS LLP
             SETH ARONSON
22           DAVID I. HURWITZ
             MARC S. WILLIAMS
23           TRISTAN SORAH-REYES
             400 South Hope Street
24           Suite 1060
             Los Angeles, CA  90071-2899
25
             Attorneys for Defendants Moshe Gavrielov,
26           Edward Rogas, Jr., and Nominal Defendant
             Vitesse Semiconductor Corporation

27

28

                                    - 2 -                                    34

1    MICHAEL GREEN
     VICE PRESIDENT, GENERAL COUNSEL AND
2    SECRETARY
     VITESSE SEMICONDUCTOR CORPORATION
3    741 Calle Plano
     Camarillo, CA  93012

4
     Attorney for Nominal Defendant Vitesse
5    Semiconductor Corporation

6    HELLER EHRMAN LLP
     SARA B. BRODY
7    HOWARD CARO
     MADELEINE LOH
8    333 Bush Street, Suite 3100
     San Francisco, CA  94104-2878

9
     Attorney for Defendant Eugene F. Hovanec
10
     MORRISON & FOERSTER, LLP
11   DAN MARMALEFSKY
     JAMES P. MANISCALCO
12   555 West Fifth Street
     Suite 3500
13   Los Angeles, CA  90013-1024

14   Attorney for Defendant Louis R. Tomasetta

15   IRELL & MANELLA LLP
     DAVID SIEGEL
16   DANIEL LEFLER
     GLENN VANZURA
17   1800 Avenue of the Stars
     Suite 900
18   Los Angeles, CA  90067-4276

19   Attorney for Defendant Yatin Mody

20   WILSON SONSINI GOODRICH &
        ROSATI, P.C.
21   NINA LOCKER
     650 Page Mill Road
22   Palo Alto, CA  94304-1050

23   Attorney for Defendant Pierre R. Lamond

24

25

26

27

28

3 5

1

**PLEASE DO NOT CONTACT THE COURT OR THE CLERK OF THE**

2

**COURT REGARDING THIS NOTICE.**

3

DATED: _____          BY ORDER OF THE COURT

4

UNITED STATES DISTRICT COURT

5

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

6

7

S:\Settlement\Vitesse.set\11-16-07 Final Revised Documents\12-19 CLEAN v8 - Derivative Action - Summary Notice of Proposed Settlement of Derivate Action.doc

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 4 -

3 6